A08A0886. APPLING v. TATUM.

(670 SE2d 795)

MIKELL, Judge.

In 2006, Scott Appling filed a petition to legitimate his biological son, L. T. T., who was born on November 8, 2004. The child's mother, Dawn Tatum, filed an answer and counterclaim to establish custody, visitation, and child support. After a bench trial, the trial court awarded joint legal custody to both parents, physical custody and child support in the amount of $2,200 monthly to Tatum, and visitation rights to Appling. The trial court also ordered Appling to pay Tatum $10,000 in attorney fees, pursuant to OCGA § 19-6-2. On appeal, Appling challenges the trial court's denial of his motion for continuance, its calculation of child support, its failure to make specific findings of fact, and its award of attorney fees. We affirm the trial court's judgment on all matters except its award of attorney fees because OCGA § 19-6-2 only applies to alimony and divorce cases.

1. In his first enumerated error, Appling argues that the trial court erred in denying his motion for continuance. "All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require."[1] As an appellate court, we will not disturb the exercise of that discretion unless the discretion is manifestly abused.[2]

Appling was not present on the day of trial, August 16, 2007. Appling's counsel filed a motion for continuance, which included a letter from a physician, stating that Appling had extensive maxillofacial surgery on August 15, 2007, and would not be available for trial until November 6, 2007. Appling's counsel argued that Appling's presence was necessary to explain his income and how it might be affected by the outcome of his surgery, and in support of his argument, relied on OCGA § 9-10-154. This statute provides that

> [i]f either party is providentially prevented from attending
> the trial of a case, and the counsel of the absent party will
> state in his place that he cannot go safely to trial without

---

[1] (Punctuation omitted.) *Simmons v. Simmons*, 265 Ga. 183, 184 (453 SE2d 696) (1995), citing OCGA § 9-10-167 (a).

[2] See id.

the presence of the absent party, the case shall be continued, provided the continuances of the party have not been exhausted.

In this case, a total of seven requests for continuances were made, five of which were filed by Appling. During the hearing on the continuance, the court indicated that Appling knew about his illness when he filed his petition and that several continuances had been granted due to his illness. Additionally, the court noted that the hearing date had been set in consideration of Appling's surgery, which was originally scheduled to occur after the hearing. Exercising its discretion, the trial court denied Appling's request for yet another continuance. We will not disturb the trial court's decision. Where there have been several continuances of the case because of a party's illness, the court does not abuse its discretion when it denies yet another motion by that party to continue the case for the same cause.[3]

2. Next, Appling argues that the trial court erred when it included income from his K-1 Schedule[4] (or pass through partnership income) in its calculation of child support.[5] We find no error.

The facts show that Appling owned 50 percent of three businesses, one of which, SKA Development, LLC, generated income shown on a K-1 Schedule. Appling's accountant testified that she filed an amended 2005 tax return, showing K-1 income of approximately $400,000 for SKA rather than the $900,000 originally attributed to SKA in Appling's original tax return.[6] She further testified that under Appling's amended 2005 tax returns, his adjusted gross income was $451,488 or $37,624/month. However, she explained that approximately $198,000 of Appling's adjusted gross income constituted K-1 income that Appling did not actually receive because it was used to operate the business.

The Internal Revenue Code defines gross income as "all income from whatever source derived," including but not limited to gross

---

[3] See *Bomar v. Equitable Mtg. Co.*, 121 Ga. 466 (49 SE 267) (1904); *Heath v. Edwards*, 29 Ga. App. 28-29 (113 SE 46) (1922). See also *Williford v. Williford*, 230 Ga. 543, 544 (198 SE2d 181) (1973) (trial court did not abuse its discretion when it denied a continuance in light of a physician's affidavit that the wife was suffering from a medical condition and appearance in court would be detrimental to her health).

[4] Internal Revenue Service Schedule K-1 (Form 1065), "Partner's Share of Income, Deductions, and Other Items." See *House v. American United Life Ins. Co.*, 499 F3d 443, 446, n. 1 (2007).

[5] The K-1 Schedule is not included in the record. The income reflected on the schedule is listed in Schedule E of Appling's 2005 tax return.

[6] The K-1 income attributed to SKA in Appling's original 2005 tax return is $1,041,791. Appling's amended 2005 return shows a net decrease in adjusted gross income based upon the amendment to the partnership return for SKA but does not include the revised K-1.

income derived from business.[7] Determining each parent's monthly gross income is the first step that a court must take in calculating child support under Georgia's child support guidelines.[8] Under the guidelines, gross income includes income from self-employment.[9] OCGA § 19-6-15 (f) (1) (B) lists the sources of income that are considered to be self-employment income.[10] This section also directs:

> In general, income and expenses from self-employment or operation of a business should be carefully reviewed by the court or the jury to determine an appropriate level of gross income available to the parent to satisfy a child support obligation. Generally, this amount will differ from a determination of business income for tax purposes.

Relying on this portion of the statute, Appling maintains that the income listed on his K-1 was not "available" to him; thus, it should not have been used to calculate his child support obligation.

Appling cites no authority in support of his position that K-1 income cannot be used to calculate child support payments. Even Appling's accountant concedes that K-1 income is treated as ordinary income by the Internal Revenue Service. Furthermore, OCGA § 19-6-15 (f) (2) outlines those items that are excluded from gross income, and income reflected on a K-1 is not included in that list. "[P]artnerships are not separately taxable entities and partnership income and expenses 'pass through' to the individual partners."[11] The K-1 Schedule determines the deductions or income that each partner in a business may state on his return after the business returns are completed.[12] In this case, the K-1 Schedule reflected income, and the

---

[7] 26 USC § 61 (a) (2).

[8] OCGA § 19-6-15 (b) (1).

[9] OCGA § 19-6-15 (f) (1) (A) (iii).

[10] The statute provides that

[i]ncome from self-employment includes income from, but not limited to, business operations, work as an independent contractor or consultant, sales of goods or services, and rental properties, less ordinary and reasonable expenses necessary to produce such income. Income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership, limited liability company, or closely held corporation is defined as gross receipts minus ordinary and reasonable expenses required for self-employment or business operations.

[11] (Citation and punctuation omitted.) *Monahan v. Commr. of Internal Revenue*, 321 F3d 1063, 1064 (I) (2003). See 26 USC § 701.

[12] See *Goulding v. United States*, 957 F2d 1420, 1427 (II) (B) (2) (1992) ("Under the Internal Revenue Code, partnerships are not taxpayers or taxable entities. When a partnership receives income, the partners record their share of that income on their individual returns and are taxed on it, whether or not that income is actually distributed to them. Partners also deduct partnership losses on their individual returns.").

trial court did not abuse its discretion when it included that income in its calculation of child support.[13]

3. In his third enumerated error, Appling contends that the trial court erred in its determination of child support because it failed to consider his present earning capacity and instead relied solely upon his 2005 income. We disagree.

The trial court determined Appling's child support obligation based upon its finding that his monthly gross income in 2005 was $37,624, which was supported by the testimony of Appling's accountant and Appling's amended 2005 tax returns. Appling argued that his business had been affected by the slowdown in the real estate market. In support of his argument, Appling's accountant offered his proposed 2006 tax returns showing a total gross income of $121,031, but she could not testify to Appling's final income in 2006. Appling's ex-wife and business partner Vicki Burrell testified that the business had suffered a decrease in sales and that there was no profit. She maintained that Appling's deteriorating health had affected the business but that the market failure was the primary cause of the slowdown. Appling complains that the trial court did not consider these factors, which were indicative of his present earning capacity.

The trial court did not err in its determination of Appling's gross monthly income. Other than the 2005 tax return, there was no documentary evidence or oral testimony that provided Appling's income for 2006. Appling introduced his proposed tax return for 2006, but offered no evidence of his actual income for that year. There was evidence, however, that Appling built a million dollar home on Lake Lanier in 2007 and that there was no mortgage owed on that house. Additionally, the domestic relations financial affidavit that Appling executed on February 27, 2007, showed a gross monthly income of $94,308.[14]

In its findings, the trial court expressly concluded that based upon Appling's affidavit, his annual income was $1.2 million; and that Appling had many assets as well as multiple business talents. Regarding Appling's present earning capacity, the trial court found that Appling would continue to have the ability to earn income sufficient to justify an award of $2,200 monthly. As an appellate court, we cannot reweigh the facts.[15] "Giving the appropriate deference to the trial court's findings of fact and its credibility determi-

---

[13] *Farrish v. Farrish*, 279 Ga. 551, 552 (615 SE2d 510) (2005) (record reviewed for abuse of discretion in the award of child support).

[14] The affidavit was filed in connection with the court's entry of the order for legitimation and temporary child support and visitation, which was filed on February 28, 2007, and awarded Tatum $2,178.98 in monthly child support.

[15] *Wood v. Wood*, 283 Ga. 8, 9 (1) (a) (655 SE2d 611) (2008).

nations, it cannot be said that the trial court abused its discretion, as the income level attributed to [Appling] was well within the range of evidence provided to the trial court."[16]

4. In two enumerations of error, Appling argues that the trial court failed to make specific findings of fact as to his income and as to any deviations from the guidelines and erred when it delegated findings of fact to Tatum's counsel. We find no error.

Appling maintains that there was no finding of fact as to his income or to the deviations from the guidelines because the trial court's oral pronouncement of the monthly child support obligation was $2,800, while the written order awarded $2,200, and the worksheet provided a presumptive amount of $2,386.81. In light of these different amounts, Appling argues that a future appellate court or trial judge could not deduce the trial court's intent in the instant case. Additionally, Appling claims that Schedule E, which must be attached where a deviation from the guidelines occurs, is not attached to the court's order. Belying Appling's contentions, the trial court's order and the hearing transcript, however, clearly set forth the manner in which the child support award was determined.

In its order, the court found that Appling's gross monthly income was $37,624. The court order provided that

[b]ased on the foregoing findings, the Child Support Worksheet and the Child Support addendum as attached, and the consent of the Respondent to a lesser amount than authorized by guidelines, the Father shall pay to the Mother the sum of $2,200 per month for the support and maintenance of the minor child.

The worksheet shows that both parents' incomes were considered and that the basic child support obligation according to the guidelines was $2,236 per month, $2,178.98 of which was to be paid by Appling. After adjusting for work-related child care and health care expenses, the presumptive child support amount owed by Appling was $2,833.52 monthly. Schedule E, which Appling argues was not attached to the court's order, is indeed attached and shows a deviation for Appling's high income. At the hearing, however, the court made a finding that Tatum was prepared to accept $2,200, an amount lower than that authorized by the guidelines, and Appling did not object. Based on the foregoing, there is no merit to Appling's argument that the trial court did not make the required findings of

---

[16] Id. Compare *Eldridge v. Ireland*, 259 Ga. App. 44, 45-46 (1) (576 SE2d 44) (2002) (child support order vacated where trial court based award on earning capacity but failed to determine the parent's gross income).

fact as to his income and the reason for the deviation.

Appling's argument that the trial court could not designate the preparation of the findings of fact to Tatum's counsel also fails. As stated above, the trial court's order complied with the requirements of OCGA § 19-6-15. The findings made were designated on the worksheet and Schedule E, which were incorporated into the trial court's order. The fact that the worksheet may have been prepared by counsel for Tatum does not render it erroneous. We note as well that at the end of the hearing, the court stated that Tatum's counsel would prepare the worksheet in accordance with the court's findings, and Appling raised no objection. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further."[17]

5. In his last enumerated error, Appling argues that the trial court erred when it awarded attorney fees without any findings of fact as to the parties' present financial status and without a hearing. We agree that the trial court erred but for a different reason. The trial court premised the award of attorney fees upon OCGA § 19-6-2, which governs the grant and enforcement of attorney fees in alimony and divorce cases.[18] As this is not such a case, the statute is not applicable here.[19] Accordingly, we reverse the trial court's award of attorney fees to Tatum.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 23, 2008 —
RECONSIDERATION DENIED DECEMBER 4, 2008.

*Susan D. Brown*, for appellant.

---

[17] (Citation and punctuation omitted.) *Padilla v. Melendez*, 228 Ga. App. 460, 461-462 (1) (491 SE2d 905) (1997).

[18] OCGA § 19-6-2 (a) provides that
[t]he grant of attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights, shall be: (1) Within the sound discretion of the court . . . ; and (2) . . . may be enforced by attachment for contempt of court or by writ of fieri facias.

[19] See *Suarez v. Halbert*, 246 Ga. App. 822, 825 (1) (543 SE2d 733) (2000) (OCGA § 19-6-2 "applies exclusively to litigation derived from divorce and alimony disputes") (citation omitted).