**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 24, 2019**

# In the Court of Appeals of Georgia

A19A0081. DINGLE v. CARTER.

RICKMAN, Judge.

Dhane Brooks Dingle ("the mother") and Horacio Carter ("the father") filed cross-motions for contempt alleging violations of certain provisions of the trial court's order governing custody of their minor child, child support, and attorney fees. Following a hearing, the trial court held the mother in contempt and made several other rulings. On appeal, the mother contends that the trial court erred by holding her in contempt for failing to notify the father of her deployment overseas, holding that the trial court lacked the authority to determine if the mother's attorney fee award was a dischargeable debt of the father's bankruptcy filing, abating a portion of the father's child support obligation, and awarding attorney fees to the father pursuant to OCGA

§§ 9-15-14 and 19-6-2. For the following reasons, we affirm in part, reverse in part, and remand the case to the trial court.

The record shows that prior to 2014, the father had physical custody of the child. In 2014, the mother filed a motion for modification of custody and the trial court entered a final order finding that it was in the best interest of the child to grant the mother primary physical custody of the child and grant the father "liberal visitation." (the "Final Order"). The mother was employed by the United States Army, and the trial court detailed in its order what should happen regarding custody of the child in the event of the mother's deployment: In the event the mother was deployed, the father would become the child's temporary guardian. The mother would be required to notify the father of her impending deployment within 14 days of receiving her deployment orders or, if the orders did not allow for 14 days notice, immediately upon receiving notice of her deployment. If the father was unable to become the child's temporary guardian, the mother was to designate another family member to assume the role.

The Final Order also required the father to pay child support to the mother every month and to maintain a life insurance policy naming the child as the beneficiary. The issue of attorney fees was reserved, and approximately seven months

2

later, the trial court ordered the father to pay $30,000 in attorney fees to the mother's attorney.

In June 2015, the mother filed a motion to hold the father in contempt for failing to pay child support and obtain the required life insurance policy. Subsequently, the trial court entered an order holding the father in contempt. That contempt order was vacated by the trial court, however, due to an issue with service of process.

Over a year later, the father filed a motion to hold the mother in contempt for, inter alia, failing to notify him of her deployment overseas. Thereafter, both parties amended their motions for contempt alleging that the other party violated various provisions of the Final Order and including the mother's contention that the father be held in contempt for failure to pay the ordered attorney fees.

Following a hearing, the trial court issued an order holding the mother in contempt for failing to notify the father about her deployment (the "Contempt Order"). In the Contempt Order, the trial court also held that it lacked the authority to determine if the mother's attorney fee award constituted a dischargeable debt in the father's bankruptcy, abated a portion of the father's child support obligation, and awarded attorney fees to the father pursuant to OCGA §§ 9-15-14 and 19-6-2.

1. The mother contends that the trial court erred by holding in her contempt for failing to notify the father about her deployment.

> The question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion. Therefore, if there is any evidence to support the trial court's determination that a party has wilfully disobeyed its order, the court's finding of contempt will be affirmed on appeal.

(Citation and punctuation omitted.) *Brochin v. Brochin*, 294 Ga. App. 406, 409 (2) (b) (669 SE2d 203).

Here, in its Final Order, the trial court ordered the mother to notify the father of her impending deployment within 14 days of receiving her deployment orders or, if the orders did not allow for 14 days notice, immediately upon receiving notice of her deployment. At the hearing on the parties' motions for contempt, the mother admitted that she did not notify the father about her deployment. The mother testified that she received her deployment orders in April 2016; however, the father did not learn of her deployment until July 2016 when the mother's attorney sent him a letter notifying him that the mother was deployed. At that point, the mother had already been deployed to Iraq. Accordingly, we find that the trial court did not abuse its discretion in holding the mother in contempt for failing to notify the father about her

4

deployment. See *Brochin*, 294 Ga. App. at 409 (2) (b) (i) (holding that the evidence supported the trial court's finding of contempt where the mother admitted that she failed to return the children to the father after her summer visitation as required by the custody order).

2. The mother contends that the trial court erred by holding that it was without authority to determine if the mother's attorney fee award was a dischargeable debt in the father's bankruptcy.

In July 2015, the father filed a petition in federal court for bankruptcy. The mother's attorney was listed as a creditor. Approximately six weeks after the father filed his petition for bankruptcy, the trial court ordered the father to pay $30,000 in attorney fees to the mother's attorney. The mother concedes in her brief to this Court that her counsel received notice that the father filed for bankruptcy prior to the entry of the order granting attorney fees. In February 2016, the father was generally discharged in bankruptcy.

The mother argues that pursuant to 11 U. S. C. § 523 (a) (5),[1] attorney fees arising from a modification of child custody are subject to an exception from

---

[1] "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for a domestic support obligation[.]" 11 U. S. C. 523 (a) (5).

dischargeability and that the trial court erred when it determined that "[t]he dischargeability of the debt lies squarely within the jurisdiction of the Bankruptcy Court."

"Whether a debt is non-dischargeable under § 523 (a) (5) because it is in the nature of alimony, maintenance, or support is a question of federal law, with state law providing guidance in determining whether the obligation should be considered 'support' under § 523 (a) (5)." (Citations and punctuation omitted.) *Rogers v. McGahee*, 278 Ga. 287, 289 (2) (602 SE2d 582) (2004). "State courts have concurrent jurisdiction with federal bankruptcy courts to determine whether a debt is in the nature of alimony, maintenance, or support." (Citations omitted.) Id. "If either the debtor spouse or the creditor spouse files a complaint in the bankruptcy court to obtain a determination of the dischargeability of the debts under § 523(a)(5), the bankruptcy court's adjudication of the complaint for determination of dischargeability is res judicata in state court." (Citation omitted.) Id. "If no complaint seeking a specific determination of the dischargeability of a debt under § 523 (a) (5) is filed, the issue of dischargeability may then be tried in the appropriate state court." (Citation and punctuation omitted.) Id.

"That the debtor former spouse has received a general discharge in bankruptcy does not deprive the state court of its jurisdiction to determine whether certain debts of the debtor former spouse are exempt under § 523 (a) (5) from dischargeability." *Rogers*, 278 Ga. at 290 (2). Since there was no evidence that the bankruptcy court determined whether the attorney fee was dischargeable, the trial court erred by holding that it lacked jurisdiction to make that determination. Accordingly, this case is remanded for the trial court to determine the dischargeability of the attorney fee debt. See id.; *Collins v. Collins*, 208 Ga. App. 862 (432 SE2d 605) (1993).

3. The mother contends that the trial court erred by abating a portion of the father's child support obligation.

The Final Order required the father to make monthly child support payments to the mother. But, while the order contemplated a potential change in guardianship for the child in the event of the mother's deployment, it was silent as to what would happen to the father's support obligation if the mother was deployed and the child was in his care. The mother sought past due child support for the time period that the child was living with the father while she was deployed.

"Unless a court order provides that child support payments are to abate while minor children are visiting with their father, such child support payments do not

7

abate." *Atkins v. Zachary*, 243 Ga. 453 (254 SE2d 837) (1979). The child support guidelines authorize a trial court to deviate from the presumptive amount of child support "if supported by the required findings of fact and application of the best interest of the child standard." OCGA § 19-6-15 (b) (8). "[D]evations may include . . . [p]arenting time." OCGA § 19-6-15 (b) (8) (K). "When ordering a deviation from the presumptive amount of child support, the court . . . shall make written findings . . . that an amount of child support other than the amount calculated is reasonably necessary to provide for the needs of the child[.]" OCGA § 19-6-15 (i) (1) (B). The order must include how "[a]pplication of the presumptive amount of child support would be unjust or inappropriate; and [t]he best interest of the child for whom support is being determined will be served by deviation from the presumptive amount of child support." OCGA § 19-6-15 (i) (1) (B) (iii) (I) and (II).

In granting the father an abatement for the time period that the child was residing with him, the trial court held that "[u]nder the facts of this case[,] allowing an abatement during the time of deployment would not do an injustice to the mother." However, the trial court did not state how the deviation was in the best interest of the child. Because the trial court failed to make the required factual findings, we must reverse and remand the case, to the trial court to determine if a deviation is in the best

8

interest of the child and, if so, to issue written findings of fact supporting the deviation. See *Fladger v. Fladger*, 296 Ga. 145, 150-151 (2) (765 SE2d 354) (2014); *Brogdon v. Brogdon*, 290 Ga. 618, 623 (5) (b) (723 SE2d 421) (2012).

4. The mother contends that the trial court erred by awarding attorney fees to the father pursuant to OCGA §§ 9-15-14 and 19-6-2.

(a) The trial court granted the father's motion for attorney fees pursuant to OCGA § 9-15-14 without holding an evidentiary hearing. "To make a valid award of attorney fees the trial court must conduct an evidentiary hearing to determine the amount of reasonable and necessary attorney fees." (Citation and punctuation omitted.) *Fox-Korucu v. Korucu*, 279 Ga. 769, 770 (1) (621 SE2d 460) (2005). Accordingly, the trial court erred by awarding fees pursuant to OCGA § 9-15-14 without a hearing. See *Fox-Korucu*, 279 Ga. at 770 (1); *Evers v. Evers*, 277 Ga. 132 (1) (587 SE2d 22) (2003).

(b) OCGA § 19-6-2 only applies to attorney fees in alimony and divorce cases. See OCGA § 19-6-2 ("The grant of attorney's fees . . . made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case . . . shall be . . ."); *Appling v. Tatum*, 295 Ga. App. 78, 83 (5) (670 SE2d 795) (2008).

9

Because this case does not involve alimony or divorce, OCGA § 19-6-2 does not apply. See *Appling*, 295 Ga. App. at 83 (5). Accordingly, we reverse the trial court's award of attorney fees to the father.

*Judgment affirmed in part, reversed in part; case remanded. Miller, P. J., and Reese, J., concur*.