**FIFTH DIVISION
REESE, P. J.,
MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 12, 2021**

# In the Court of Appeals of Georgia

A20A1938. DANIEL v. DANIEL.

MARKLE, Judge.

Jamie Daniel appeals from the trial court's final divorce decree and order on reconsideration in the divorce action against Travis Daniel, challenging the trial court's distribution of the marital property and its calculations of child support and other expenses related to the children in favor of Travis. On appeal, she contends that (1) the trial court erred by (a) not attaching to the child support addendum certain documents required by statute, (b) miscalculating child support based on the evidence submitted, and (c) not requiring Travis to pay for certain uncovered medical expenses; (2) inequitably dividing the marital and personal property; (3) not ordering Travis to reimburse her for expenditures paid on behalf of the children and for the marital home prior to the parties' consent temporary order and by failing to clarify the

date through which Travis was required to pay his portion of the children's uncovered medical expenses under the contempt provisions of the decree; and (4) denying portions of her motion for reconsideration.

For the reasons that follow, we affirm the trial court's decree as to its determination of child support and payment of uncovered medical expenses not deemed medically necessary. We also affirm the trial court's decree as to the distribution of the marital property. However, we remand the case to the trial court with direction to clarify its award of two specific items of property. We also remand the case to the trial court to determine the date through which Travis is required to pay medical expenses as ordered under the contempt provisions of the divorce decree. Finally, we reverse the trial court's determination that it lacked authority to order Travis to reimburse Jamie for expenditures paid on behalf of the children and for the marital home prior to the parties' consent temporary order, and remand the case to the trial court with direction to make further findings in this regard.

"In the appellate review of a bench trial, we will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. But when a question of law is at issue, we review the trial court's decision de novo."

(Citations and punctuation omitted.) *Sedehi v. Chamberlin*, 344 Ga. App. 512, 516 (811 SE2d 24) (2018).

So viewed, the record shows that Jamie and Travis married in June 2002 and have three minor children. After 15 years of marriage, they separated, and Travis subsequently filed for divorce on grounds the marriage was irretrievably broken. At the time of divorce, both parties were gainfully employed; Travis worked at McKenny's, Inc., and Jamie was the sole member of two businesses, Jamie M. Daniel & Associates, Inc., which she ran from the marital home, and Middle Georgia Property Management Company, LLC.

In his complaint for divorce, Travis sought joint legal custody of the children with visitation rights; equitable distribution of marital property, assets, and debts; to keep his separate property; and attorney fees and costs. Jamie counterclaimed, alleging Travis had been unfaithful. She further sought temporary and permanent joint legal custody and primary physical custody of the children; child support; life and health insurance with the children as beneficiaries; equitable division of assets and liabilities; temporary and permanent exclusive use of the marital home and surrounding property, as well as two other properties owned by the parties; the

business she runs from the marital home, and all assets owned by the business; four vehicles; and alimony and attorney fees and costs.

Although this was a contentious divorce, involving numerous court proceedings, the parties were able to reach some agreements, including a temporary consent agreement to the sale of an RV, and a temporary order regarding custody of the children, visitation, and one of Travis's life insurance policies.[1] In another temporary consent order, the parties agreed, among other things, to place two of their properties in Forsyth up for sale, one located on Westbrooks Road and another on Weldon Road, and that Jamie would continue to pay the mortgage on the Westbrooks Road property until further order of the court. They also agreed that Jamie would receive the rental payments for the property located at Blount Road in Forsyth, and that the proceeds from the Westbrooks Road sale would be used towards the outstanding Wells Fargo equity line of credit, with the remaining balance to be placed in Jamie's attorney's trust account. As to child support, they agreed that Travis would pay Jamie $2,037 per month, which included payment of the children's private school tuition, and an additional $500 per month in child support. They further agreed that

---

[1] The parties also consented to a parenting plan, which the trial court accepted, in which they agreed to have joint legal custody of the children with Jamie having primary physical custody and Travis having visitation rights.

Travis would continue to cover the children under his health insurance, and the parties would equally divide any medical expenses not covered by insurance, including "medical, dental, orthodontic, ophthamology expenses, psychological, hospitalization, co-pays or drug expenses" within 30 days of receiving documentation of same.

Despite their agreements, there remained several unresolved issues, including future child support; division of personal property and three jointly owned real properties; Jamie's contempt claims against Travis for failure to pay child support and his portion of unrecovered medical expenses for the children under the parties' consent temporary order;[2] Jamie's request for reimbursement of certain expenses made on behalf of the children and the household; and Jamie's request for alimony and attorney fees. As to these issues, the case proceeded to a three-day bench trial.

Following trial, the trial court granted Travis's petition for divorce, awarding the parties joint legal custody of the children with primary physical custody to Jamie, and it issued a child support addendum, reflecting calculations of the parties' income for purposes of child support. Relevant to this appeal, the trial court specifically found that: (1) Travis's gross monthly income was $6,073.84, and Jamie's was

[2] Jamie filed her contempt motions in this regard in May and June 2018.

$10,416.67, and it ordered Travis to pay $996.00 monthly in support; (2) the parties were each responsible for 50 percent of the childrens' medical expenses that are not covered by insurance, but not including over-the-counter medications and chiropractic visits unless they were medically necessary and ordered by the childrens' doctor; (3) Travis received sole and exclusive possession of two dirt bikes, and a utility trailer, and Jamie received a car hauler trailer; (4) the marital home was awarded to the parties as joint tenants in common, with Jamie having exclusive right and possession of it until the youngest child turned 18, and that the parties were to equally pay the mortgage, taxes, and insurance, with Jamie paying all utilities and maintenance;[3] (5) the parties were to equally divide the monthly payments, taxes, insurance, and expenses for their property located on High Falls Road in Jackson until the property sold, and then they would equally divide the proceeds; (6) the parties were to equally divide the monthly proceeds from the sale of their property on Blount Road, which was sold during the pendency of the divorce, until the contract is paid in full; (7) Travis retained ownership of and was permitted to retrieve from the marital residence his personal jewelry and all other personal property; and (8) neither

_____

[3] The trial court further ordered that once the youngest child turned 18, the parties were to sell the marital home and split the proceeds, and each retained the right to buy the other party out if they chose.

party was to pay alimony, and each was responsible for paying their own attorney fees. With respect to Jamie's contempt claim, the trial court ordered Travis to pay Jamie $9,037.48, within 90 days, per the parties' temporary order, representing half the children's unpaid medical expenses not covered by insurance owed since January 2018, "to date." However, because there was no court order entered prior to the parties' temporary order, the trial court found that it could not order Travis to reimburse Jamie for any expenditures on the marital home or the children prior to that temporary order.

Jamie moved the trial court to reconsider the divorce decree, seeking to change the calculation of her monthly income; to require Travis to pay for over-the-counter medications and chiropractic visits; to clarify the time frame in which Travis should pay her for uncovered medical expenses; to alter the equitable distribution of marital property; to change its contempt ruling and hold Travis in contempt for non-payment of the children's expenses prior to the parties' temporary order, and to clarify the dates included in Travis's arrearage for the children's unpaid medical expenses prior to January 2018; and to reconsider its denial of her request for alimony and attorney fees.

Upon reconsideration, and following a hearing, the trial court clarified that Travis should pay Jamie for uncovered medical expenses within 30 days of receiving documentation of the expenses, and denied the motion as to the remaining issues. With respect to payment of over-the-counter medications and chiropractic visits, the trial court found that Jamie frequently took the minor children to the doctor, and thus it would not delete this language from the divorce decree. Jamie filed an application for discretionary appeal, which we granted, and this appeal followed.[4]

---

[4] Our review is of the divorce decree and the denial of the motion for reconsideration. We have jurisdiction to entertain the issues on appeal because the trial court's order denying reconsideration constituted a final order, and Jamie timely filed an application for discretionary appeal within 30 days of entry of the order, allowing her to assert error as to the original divorce decree. See *Morton v. Macatee*, 345 Ga. App. 753, 756 (1), n. 1 (815 SE2d 117) (2018). At the time Jamie filed her appeal, it appears from the record that both parties had motions for contempt pending before the trial court. In a "partial final order," the trial court reserved all contempt matters for a future hearing and determination. Notably, that order and the rule nisi show the contempt motions were docketed under trial court case numbers different than that of the final divorce decree and motion for reconsideration. Nevertheless, we conclude that the language of the trial court's final divorce decree shows it was intended to be final as to all pending motions, and the language of the order for reconsideration was further intended as a provision for addressing any *future* motions for contempt. Also, Jamie's notice of appeal divests the trial court of jurisdiction while the appeal of the divorce decree is pending. See *Mughni v. Beyond Mgmt. Group, Inc.*, 349 Ga. App. 398, 402 (3) (825 SE2d 829) (2019). Accordingly, we have jurisdiction to resolve this appeal.

1. Jamie first argues that the trial court erred in enforcing the child support addendum because: (a) the child support worksheet was not attached, as required by statute; (b) there was insufficient evidence to support the trial court's calculation of her income for purposes of determining child support, alimony and attorney fees; and (c) the trial court exceeded its authority in determining what expenses qualified as uncovered medical expenses. We evaluate each contention in turn, finding no merit to any of them.

(a) *Failure to attach worksheet*.

Generally, OCGA § 19-6-15 (m) (1) requires the trial court to attach to the final order the "child support worksheets and any schedule that was prepared for the purpose of calculating the amount of child support[.]" In addition to including the requisite findings of fact, "the trial court must attach a completed child support worksheet and Schedule E to the child support order, *incorporate those documents by reference into the order*, or enter the pertinent information from those documents directly into the order itself." (Citations omitted; emphasis supplied.) *Black v. Ferlingere*, 333 Ga. App. 789, 791 (2) (777 SE2d 268) (2015); see also OCGA § 19-6-15 (m) (1); *Park-Poaps v. Poaps*, 351 Ga. App. 856, 867 (6) (833 SE2d 554) (2019) (reiterating that generally the trial court must either attach the child support

9

worksheet and Schedule E to the order or incorporate the documents by reference in its order).

Travis concedes that the child support worksheet was not attached to the child support addendum as the statute requires. However, the trial court's failure to attach the child support worksheet here is not fatal because the record reflects that the worksheet was proffered and admitted during trial, and the trial court referenced the child support worksheet in the child support order addendum. As such, where the relevant information was referenced in the addendum, the trial court did not err in failing to attach the child support worksheet. *Black*, 333 Ga. App. at 791 (2).[5]

_____

[5]We acknowledge OCGA § 19-6-15 (m) (1) indicates that the "child support worksheets and any schedule that was prepared for the purpose of calculating the amount of child support *shall* be attached to the final court order or judgment[.]" (Emphasis supplied). However, the Supreme Court's interpretation of the mandatory language of the statute is not so strict. See *Demmons v. Wilson-Demmons*, 293 Ga. 349, 349-350 (1) (745 SE2d 645) (2013) ("merely incorporating the gross monthly income information from the child support worksheet into the Final Order (through attachment *or through other means*) would have made a remand unnecessary here[.]") (emphasis supplied). And we are bound by our Supreme Court precedent. See *Ga. Lottery Corp. v. Patel*, 353 Ga. App. 320, 324, n. 8 (836 SE2d 634) (2019) ("But we have no authority to review or abandon the precedent from our Supreme Court, and we are bound by that precedent until that Court makes a different pronouncement.") (citations omitted). Here, the trial court made no deviations from the presumptive child support amount, and thus Schedule E was not required. And, although not attached to the child support addendum order, the child support worksheet was admitted into evidence and made a part of the appellate record for our review, and it was incorporated by reference in the trial court's order. Thus, under the circumstances

10

(b) *Calculation of child support.*

Jamie contends the trial court did not reduce the gross sales from her businesses by the reasonable expenses required for self-employment or business operations. However, the child support addendum contains the requisite findings by the trial court in calculating the parties' income and Travis's monthly child support obligations.

> The Internal Revenue Code defines gross income as "all income from whatever source derived," including but not limited to gross income derived from business. Determining each parent's monthly gross income is the first step that a court must take in calculating child support under Georgia's child support guidelines. Under the guidelines, gross income includes income from self-employment. OCGA § 19-6-15(f)(1)(B) lists the sources of income that are considered to be self-employment income. This section also directs: In general, income and expenses from self-employment or operation of a business should be carefully reviewed by the court . . . to determine an appropriate level of gross income available to the parent to satisfy a child support obligation.

(Citations and punctuation omitted.) *Appling v. Tatum*, 295 Ga. App. 78, 80 (2) (670 SE2d 795) (2008). Further, it was for the trial court to determine whether a party's

---

of this case, we do not find that the failure to attach the child support worksheet to the child support addendum requires remand.

11

own representations regarding her income were credible, and we will not disturb the trial court's factual findings in this regard if there is any evidence to support them. *Autrey v. Autrey*, 288 Ga. 283, 284-285 (2) (702 SE2d 878) (2010); see also *Calloway-Spencer v. Spencer*, 355 Ga. App, 743, 746 (3) (845 SE2d 715) (2020) ("We will not disturb a trial court's factual findings regarding a party's income unless clearly erroneous.The standard by which findings of fact are reviewed is the 'any evidence' rule, under which a finding by the trial court supported by any evidence must be upheld.") (citation and punctuation omitted).

At trial, Jamie testified that her monthly income was $10,657 for tax year 2016, and $16,410 for tax year 2017. The trial court also considered evidence regarding her two businesses in the form of pay stubs and tax forms. The trial court reviewed her financial affidavit and child support worksheet, in which she estimated her income at $3,000 per month, as well as her credit cards and business profit and loss statements which showed gross sales of $117,206.65 for 2017, and $53,121 for 2018, but that her net income for 2018 was a loss of $6,000. Notably, the trial court also considered the possible commingling of her personal and business accounts and credit cards, and that her credit cards showed spending habits inconsistent with her claims of lower income as well as legal expenses paid in an unrelated action.

12

The trial court further considered Travis's testimony at trial. Travis disputed Jamie's claim that she made only $3,000 a month and submitted his own financial affidavit and child support worksheet, showing that he earns approximately $33 an hour and $77,000 a year, and he agreed that his pay stubs show his gross monthly income as $6,418.35.

Considering this evidence, and applying the statutory requirements of OCGA § 19-6-15, the trial court found Jamie's testimony regarding her income not credible. And it specifically found that the figures submitted by Travis were more accurate. It therefore determined that Jamie's gross monthly income was $10,416.67 per month, and that no Schedule E deviations applied. It was for the trial court to sift through the evidence, resolve any conflicts, and weigh the credibility of the witnesses. *Autrey*, 288 Ga. at 284-285 (2); *Sedehi*, 344 Ga. App. at 516. Based on the record evidence, and in giving deference to the trial court's factual findings and witness credibility determinations, we find no clear error in the trial court's determination of child support. *Autrey*, 288 Ga. at 284-285 (2).

(c) *Uncovered medical expenses*.

13

Jamie argues the trial court erred in excluding reimbursements for the children's over-the-counter medications and chiropractic visits. The trial court did not exceed its authority in this regard.

> "Uninsured health care expenses" means a child's uninsured medical expenses including, but not limited to, health insurance copayments, deductibles, and such other costs *as are reasonably necessary* for orthodontia, dental treatment, asthma treatments, physical therapy, vision care, and any acute or chronic medical or health problem or mental health illness, including counseling and other medical or mental health expenses, that are not covered by insurance.

(Emphasis supplied.) *Stoker v. Severin*, 292 Ga. App. 870, 873 (1) (b), n. 7 (665 SE2d 913) (2008); OCGA § 19-6-15 (a) (23). OCGA § 19-6-15 (h) (3) (A) also provides that a child's uninsured medical expenses are the shared responsibility of both parents and shall be divided pro rata, *unless otherwise specifically ordered by the court*.

Here, the trial court heard evidence that at least one of the children suffered from allergies and required an inhaler, another required a hearing aid, and that all the children received periodic chiropractic treatments to prevent ailments such as ear infections. With respect to past medical expenses for the children, Jamie testified to expenses from August 2017 to September 2018, submitted into evidence voluminous

14

pages of medical documents relating to bills and receipts, and asserted that the parties agreed in the consent temporary order to split these costs.

Travis acknowledged that he owed Jamie for certain medical expenses for the children, but testified that he refused to pay for chiropractic visits not recommended by a doctor, and allergy medications that Jamie obtained through prescriptions rather than over-the-counter. He claimed that most of the counseling charges were as a result of the way Jamie treated the children. He explained that Jamie sent an overwhelming number of emails regarding the medical expenses, but did not include receipts for the charges, making it difficult for him to determine the amount he owed. The trial court ordered that each parent is equally responsible for any reasonable medical expenses not covered by health insurance, but excluded over-the-counter medications and chiropractic visits unless a doctor deemed them to be medically necessary.

The trial court is not required to order a party to pay for uncovered medical expenses not deemed to be medically necessary. OCGA § 19-6-15 (a) (23); OCGA § 19-6-15 (h) (3) (A). In declining to modify this portion of its ruling upon reconsideration, the trial court specifically found that the "evidence at trial showed that [Jamie] frequently brought the children to the doctor," reflecting the trial court's

belief that many of the uncovered medical expenses were not reasonably necessary. Again, it was for the trial court to sift through the evidence and weigh the credibility of the witnesses and, in doing so, it did not find Jamie's evidence regarding these uncovered medical expenses to be credible. *Sedehi*, 344 Ga. App. at 516. As such, we cannot say that the trial court's factual finding in this regard was clearly erroneous. See *Stoker*, 292 Ga. App. at 873 (1) (b), n. 7; see also OCGA §§ 19-6-15 (a) (23); 19-6-15 (h) (3) (A).

2. Jamie next argues that the trial court erred in dividing the parties' marital assets and improperly distributing their personal assets because it (a) did not include the Westbrooks Road property in the divorce decree; (b) awarded the Weldon Road marital residence to both parties as joint tenants in common, while requiring Jamie to be financially responsible for utilities, maintenance, and upkeep, and the requirement that the property be sold at a later date was ambiguous; (c) failed to establish a time line and procedures for handling expenses related to the High Falls Road property; (d) exceeded its authority in relation to the Blount Road property by requiring a third party to make equal rental payments to each of the parties until the contract was paid in full; and (e) did not equally divide the marital property, awarded the same trailer to both parties, awarded Travis personal property that Jamie did not

16

have in her possession, and erroneously awarded to Travis personal property that belonged separately to Jamie. We conclude the trial court did not err in its division and distribution of the parties' assets, but that the trial court erred with regard to which trailer was to be given to each party. We, therefore, remand the case to the trial court to clarify the language in the decree.

To begin, we note that

an equitable division of marital property does not necessarily mean an equal division. The purpose behind the doctrine of equitable division of marital property is to assure that property accumulated during the marriage be fairly distributed between the parties. Each spouse is entitled to an allocation of the marital property based upon his or her respective equitable interest therein. Thus, an award is not erroneous simply because one party receives a seemingly greater share of the marital property. Instead, the trial court has broad discretion to equitably divide the marital property.

(Citations and punctuation omitted.) *Dupree v. Dupree*, 287 Ga. 319, 321 (3) (695 SE2d 628) (2010). With these guiding principles in mind, we turn to Jamie's specific arguments regarding the marital property.

(a) With respect to the Westbrooks property, Jamie contends the trial court erred by not including this property in the divorce decree, and thus created ambiguity as to which party was financially responsible for the property. We discern no error.

It appears there were two separate rental properties located on Westbrooks Road: one of which the parties agreed to sell, and the other which adjoins the marital residence and which Jamie testified she uses as part of the marital home. Jamie testified that she pays the insurance on this property. Travis testified the property was worth about $40,000. In its order, it appears that the trial court awarded the marital residence on Weldon Road, as well as the *two* adjoining land lots adjacent to the property, to both Travis and Jamie as joint tenants in common, but it did not otherwise specify between the two Westbrooks properties. Nevertheless, the trial court's omission in the divorce decree regarding same does not constitute error.

> It has long been the rule that title to property not described in a verdict or judgment is unaffected by the decree and remains titled in the name of the owners as before the decree was entered. The rule of law is clear that a divorce decree must specifically describe and dispose of property in which both parties have an interest or the decree will not divest either party of their interest in the property . . . Because the property at issue was not specifically described in the divorce decree, title to the property was unaffected by the decree and remained titled in the names of both

18

parties[.] Accordingly, the omission from the judgment of an explicit award of . . . the property . . . is not reversible error.

(Citation and punctuation omitted.) *Messaadi v. Messaadi*, 282 Ga. 126, 127 (1) (646 SE2d 230) (2007); see also *Davis v. Davis*, 287 Ga. 897, 898 (700 SE2d 404 ) (2010). Accordingly, where the trial court's divorce decree did not otherwise provide, the property remains titled as it was before the divorce decree was entered. Therefore, the trial court did not err in this respect.

(b) Jamie argues that the trial court erred in awarding the Weldon Road marital residence to both parties, making them joint tenants in common while requiring Jamie to be financially responsible for utilities, maintenance, and upkeep. She also argues that making the parties joint tenants in common was ambiguous because it allows Travis the right to enter the home whenever he wants. Again, we discern no error.

Georgia law recognizes the creation of a tenancy in common as a result of a divorce decree, with each of the parties having a one-half undivided interest in the property. See *Harvey v. Sessoms*, 284 Ga. 75 (663 SE2d 210) (2008) (regarding a petition for partition of marital home, but recognizing the creation of tenancy in common with regard to the marital home as a result of the divorce decree). Moreover, with regard to the marital home, the trial court has broad discretion to fashion a

remedy suitable to the parties involved. See *Dupree*, 287 Ga. at 321-322 (4) (trial court has broad discretion to divide marital property fairly, which includes the authority to order the future sale of the parties' residence and to account for how the existing mortgage will be paid until the sale).

Here, the trial court heard and considered evidence that Jamie wanted to remain in the marital property because it was the only home the minor children had ever known. Travis testified he wanted the marital home, but, if it was awarded to Jamie, he would like right of first refusal if she decided to sell it. Based on the evidence before it, the trial court awarded the marital property to the parties as joint tenants in common, with Jamie having exclusive right and possession of it until the youngest child turned 18, at which time the parties would sell the home and split the proceeds. The trial court further ordered the parties to each pay half the mortgage, taxes, and insurance, with Jamie paying all utilities and maintenance, as she was the party granted the right to live in the home with the children. In this regard, the trial court fashioned a remedy, by awarding the marital home as tenants in common, suitable to both parties and their respective interest in the home, and we conclude the trial court did not abuse its discretion in this regard. *Harvey v. Sessoms*, 284 Ga. 75; *Dupree*, 287 Ga. at 321-322 (4).

(c) As for the High Falls Road property, Jamie argues that the trial court erred in failing to provide a procedure to ensure payment of the mortgage, taxes, insurance, and other expenses for the property. We conclude that, under the circumstances of this case, the trial court was not required to further delineate in the divorce decree specific details governing how the parties were to manage this property.

Jamie testified that she would continue to pay the mortgage if awarded the property in the divorce, as the parties agreed in the temporary consent order. Travis testified that he had a discussion with Jamie and the tenant about the rental cost being increased, and that Jamie was to use the money held in her attorney's trust account from the sale of the other Westbrooks property to pay expenses on this property until it could be sold. And the trial court agreed that the money should be taken from the trust account to pay for the expenses lest the High Falls Road property go into foreclosure.[6] Ultimately, the trial court ruled that the parties were to equally divide the monthly payments, taxes, insurance, and expenses for the property until the property sells, at which time they are to equally divide the proceeds.

---

[6] At the conclusion of trial, the trial court ordered counsel to write a check from the client trust account to satisfy the payments on the High Falls Road property.

21

The degree of detail to be set forth in findings of fact in a final judgment awarding equitable division of marital property should, as a practical matter, depend upon the degree of complexity of the issues presented. In a case such as this one, where the equitable division of the marital estate is simple and straightforward, less detail is required.

(Citation omitted.) *Arthur v. Arthur*, 293 Ga. 63, 66 (2) (a) (743 SE2d 420) (2013); see also *Dupree*, 287 Ga. at 322 (4) ("A divorce decree must finalize the process by which marital property will be equitably divided, but that process need not and often cannot feasibly be completed until after the decree is entered."). The trial court's order adequately sets out the parties' obligations with respect to this property. Accordingly, we find no error in this regard.

(d) Jamie argues that the trial court erred in regard to the Blount Road property because it lacked jurisdiction to require the third party to whom the property was sold to pay Travis and Jamie equally on a monthly basis. We conclude that the trial court committed no error here as it placed no such requirement on the third party.

As to this property, Jamie testified that the Blount Road property was under a purchase agreement by a third party, who was responsible for the property taxes and insurance, and that the monthly rental payment of $500 was paid directly to her. Travis testified that the rent paid by the third party for the Blount Road property

22

should be divided equally between himself and Jamie. The trial court ordered the parties to equally divide the monthly proceeds from the rent until the contract is paid in full. Thus, under the plain language of the decree, the trial court never required the third party to pay Travis and Jamie individually and equally for this property, and thus we discern no error.

(e) Jamie also argues that the trial court erred in improperly awarding the same trailer to both parties and by erroneously awarding to Travis property belonging to Jamie as well as property Jamie claims she did not have in her possession. We agree that it appears the trial court awarded the wrong trailer in the divorce decree, but we find no error as to the award of the remaining items.

With respect to the trailers, the evidence showed that there were two different trailers at issue in this case: a box trailer and an eight feet by sixteen feet open-ended trailer that was a gift to Jamie from her uncle. Jamie testified that the box trailer should not be included in the distribution of assets because she used it to transport the kids' four-wheelers and dirt bikes during family trips. Travis testified that he wanted to keep the box trailer, but acknowledged that the eight feet by sixteen feet trailer belonged to Jamie because it was given to her by her uncle.

In the divorce decree, the trial court awarded to Travis the "16' utility trailer" and awarded to Jamie the "24' 2015 Car Hauler Trailer." Jamie moved the trial court to reconsider the divorce decree to the extent it awarded the same item, which she described as the "2015 Car Hauler Trailer," to both parties, but the trial court declined to do so. Because the parties concede on appeal that the trial court awarded the parties the wrong trailer, and because it is unclear from the divorce decree which trailer the trial court intended for each party to have, we vacate and remand the case to the trial court to clarify this portion of the divorce decree to provide a more accurate description of which trailer is awarded to each party.

As for the remainder of the personal property Jamie claims was improperly distributed, the trial court awarded Travis a gold nugget watch, gold ring, nugget ring, and mason ring, and all other personal possessions, and it allotted him 90 days from the date of the award to retrieve these items from the marital home. In this regard, the record reflects that the trial court considered the personal property of both sides in making its distribution. And while Jamie was in possession of the home where these items were located, the trial court never specified whether or not it found Jamie to in fact be in possession of these items. We conclude the trial court did not abuse its discretion in awarding these items to Travis. *Dupree*, 287 Ga. at 321 (3).

Next, with respect to the Polaris Razor ATV, Jamie claims the trial court erred in awarding Travis the bike because it was her separate property. However, this contention is belied by her own testimony that she and Travis bought the bike for the children. Based on this evidence, the trial court was aware of and considered the fact that the property was purchased for use by their children, and thus was not Jamie's personal property, but was marital property subject to equitable distribution. As such, we cannot say that the trial court abused its discretion or acted inequitably in deciding to award this item to Travis. *Dupree*, 287 Ga. at 321 (3).

Finally, to the extent that Jamie generally contends that Travis received a greater percentage of the marital property than did she, we reiterate that "an award is not erroneous simply because one party receives a seemingly greater share of the marital property. Instead, the trial court has broad discretion to equitably divide the marital property." (Citations omitted.) *Dupree*, 287 Ga. at 321 (3). The record reflects that the trial court considered all of the marital property in making its distribution, and Jamie has not shown how the trial court abused its discretion in dividing the marital property.

3. With respect to the contempt provisions of the divorce decree, Jamie argues that the trial court erred in determining it could not order Travis to reimburse her for

expenditures she paid for the minor children and the marital residence prior to the parties consent temporary order.[7] She further argues that the contempt provisions in the divorce decree are ambiguous in that the trial court required Travis to pay only his half portion of the children's uncovered medical expenses up to a certain date, but not through the date of the final divorce decree. We examine each issue in turn, and conclude that we must reverse the trial court's order and remand this case for further proceedings.

On the issue of payment for expenses not covered by the parties' temporary consent order, the law provides that a party cannot be held in contempt for violation of a court order that fails to inform him in definite terms as to the duties imposed upon him. See *Morgan v. Morgan*, 288 Ga. 417, 419 (1) (704 SE2d 764) (2011). However, where a divorce action is pending, and a spouse subsequently seeks temporary support for a minor child, the trial court may consider and award such support covering the period from the time the divorce is filed until a temporary order

_____

[7] Travis argues this issue is moot because Jamie did not challenge the temporary order on appeal. However, this argument is meritless because the trial court determined that it lacked authority to order Travis to reimburse Jamie for these pre-temporary order expenses in the divorce decree and in its denial of the motion for reconsideration as to same. See *Morton*, 345 Ga. App. at 756 (1), n. 1. Thus, Jamie's appeal on this issue is properly before the court.

26

or final hearing is held, and it may exercise its discretion in determining the amount of that support, which will not be disturbed absent an abuse of that discretion. See *Murray v. Murray*, 206 Ga. 702, 704 (1) (58 SE2d 420) (1950).

Prior to trial, the parties entered a consent temporary order wherein Travis agreed to pay Jamie $2,037 per month in child support. The consent order further provided that the parties agreed to equally divide any uncovered medical expenses for the children within 30 days of receipt of the bill from the other party. The consent order, however, made no provisions for expenses Jamie incurred prior to the parties' agreement. Thereafter, Jamie filed a contempt motion against Travis based on his failure to pay his portion of uncovered medical expenses. . However, that motion did not specifically reference payment of any uncovered medical expenses prior to entry of the consent temporary order.

At trial, Jamie testified that Travis "provided zero financial support" from the time the parties separated up to the entry of their consent temporary order, and that he owed her $4,612.50 in child support for which she sought to be reimbursed. She also submitted evidence showing expenses she paid for the minor children prior to the temporary consent order.

27

In the contempt provisions of the final divorce decree, the trial court found that, because there was no court order in place prior to the parties temporary consent order, it could not order Travis to reimburse Jamie for any expenditures on the marital home or the minor children prior to the consent temporary order. We agree that the trial court lacked authority to hold Travis in *contempt* for failure to pay amounts that the trial court had not previously ordered him to pay. See *Morgan*, 288 Ga. at 419 (1).

Nevertheless, the trial court was permitted to consider evidence and exercise its discretion to require Travis to reimburse Jamie for such expenses incurred prior to the consent temporary order. *Murray*, 206 Ga. at 704 (1). As such, we reverse this portion of the trial court's final divorce decree and remand this case to the trial court with direction to evaluate Jamie's claim as to these expenses.

Jamie next argues that the contempt provision requiring Travis to pay only those expenses from "January 2018 to date" is ambiguous. We agree that this portion of the divorce decree is unclear.

In the final decree, the trial court found Travis to be in willful contempt and ordered him to pay all monies owed to Jamie since January 1, 2018 and gave him 90 days to pay Jamie $9,037.48 to cover his portion of the children's medical expenses not covered by insurance. In denying the motion for reconsideration, the trial court

declined to clarify its award, but it did specify that Travis was to pay Jamie for uncovered medical expenses within 30 days of receiving documentation of the expenses.

On appeal, Travis contends, and Jamie concedes, that she submitted evidence at trial of expenses she paid from January 2018 to November 2018, but not through the date of the final divorce decree. However, Jamie contends that she paid additional uncovered medical expenses from December 1, 2018 through the date of the final decree and that Travis has not paid his portion of these additional expenses. Jamie testified at trial that she paid medical expenses for the children from January 2018 "to present," of which Travis owes $1,525.27 and which Jamie claimed Travis refused to pay. And although Jamie contends she submitted evidence of medical expenses through November 2018, it appears the evidence she submitted at trial shows uncovered medical expenses for the children from January 16, 2018 through June 18, 2018. Jamie did not submit evidence of medical expenses she incurred up through the date the divorce decree was entered.

Given these disparities, the trial court's order is unclear as to what is meant by "to date," and whether it means through the date for which Jamie submitted evidence

at trial or through the date the final divorce decree was issued. As Jamie concedes, she only submitted evidence at trial of uncovered medical expenses through November 2018. However, because the trial court's order is unclear in terms of providing a specific date with regard to the medical expenses, we remand the case to the trial court to make further determinations as to these medical expenses and the date through which Travis is required to pay.

4. Finally, Jamie argues that the trial court abused its discretion by denying her motion for reconsideration with respect to: (1) the calculation of income; (2) payment of uncovered medical expenses; (3) the division of marital property; and (4) reimbursement for expenditures.[8]

"A trial judge has the inherent power during the same term of court in which the judgment was rendered to revise, correct, revoke, modify, or vacate the judgment." (Citation omitted.) *Todd v. Todd*, 287 Ga. 250, 253 (2) (703 SE2d 597) (2010); see also OCGA § 15-1-3 (6) (inherent power of the trial court to amend its orders).

---

[8] Jamie also contends the trial court abused its discretion by denying her motion for reconsideration with respect to alimony and attorney fees. However, she cites no argument or authority in support of this enumeration, and we therefore deem this claim abandoned. *Morton*, 345 Ga. App. at 757 (1) (a), n. 2; Court of Appeals Rule 25 (c) (2).

We have concluded that the trial court erred in confusing the two trailers in the final divorce decree and in erroneously concluding that it could not order Travis to pay for certain expenditures absent a prior court order. However, we conclude that the trial court did not err in denying the motion to reconsider the remaining portions of the divorce decree.

In sum, we affirm the trial court's determination of child support, its finding that Travis is not required to pay uncovered medical expenses not deemed medically necessary, and its distribution of the marital property. Because it appears the trial court erred in its award of the trailers in the divorce decree, we remand the case to the trial court with direction to clarify this portion of the decree. We further remand the case to the trial court to determine the date through which Travis is required to pay medical expenses as ordered under the contempt provisions of the divorce decree. We reverse the trial court's finding that it lacked authority to order Travis to reimburse Jamie for expenditures paid on behalf of the children and for the marital home prior to the parties consent temporary order, and remand the case to the trial court with direction to make further determinations in this regard.

*Judgment affirmed in part; reversed in part; and case remanded with direction.*

*Reese, P. J., and Colvin, J., concur.*

31